**SIGNED THIS: March 28, 2014**

_____
**Mary P. Gorman**
**United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 10-71700 |
| MYRICK JAMES POWERS and | ) | |
| ELVIE OWENS-POWERS, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| In Re | ) | |
| | ) | Case No. 11-72448 |
| DAVID W. POWELL, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |

## O P I N I O N

The Chapter 13 Trustee has filed motions to modify the confirmed plans in each of these

cases. The Trustee claims that the debtors in each case have had increases in their incomes since their

–1–

plans were confirmed and, accordingly, their plans should be modified to provide increased payments to unsecured creditors. Because the Trustee has failed to meet his burden of proof and failed to establish that he is entitled to the relief requested, both motions will be denied.

## I. Factual and Procedural Background

Because the same legal issues were raised in each of these cases, they have been consolidated for the purposes of this Opinion. The factual basis for the Trustee's motion in each case is different, however, and the facts of each case must be set forth separately.

### A. Myrick and Elvie Powers

Myrick and Elvie Powers filed their voluntary petition under Chapter 13 on May 24, 2010. At the same time, they filed their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("B22C"). The calculations on their B22C resulted in the Powers being identified as over-the-median-income debtors with a five-year applicable commitment period for their Chapter 13 plan. The Powers' income was disclosed on their B22C and their Schedule I as consisting of about $5800 gross per month from Mrs. Powers' employment, $1479 per month in Mr. Powers' Social Security benefits, and $1129 per month in Mr. Powers' VA benefits.

On March 1, 2011, the Powers' First Amended Chapter 13 Plan ("Plan") was confirmed. The Plan proposed that the Powers would pay $660 to the Trustee for seven months and then $758 per month for fifty-three months. From the amounts paid in, the Trustee was directed to pay the claims of several secured creditors and distribute "approximately $22,665" to unsecured creditors. The Powers' B22C calculation had resulted in available monthly disposable income of only $18.43. The

significant payment to unsecured creditors was required because the Powers owned a non-exempt unencumbered parcel of real estate valued at $29,900.

In February 2012, the Powers moved to sell their residential real estate for an amount less than what was owed against it. They expected to complete the sale with financial assistance from Mrs. Powers' employer. After the sale was approved and closed, the Powers moved to modify the terms of their Plan to remove the payments on their mortgage arrearage debt which had been fully satified through the sale. They also requested that their monthly payments to the Trustee be reduced to the amount necessary to fund the Plan with the mortgage arrears deleted. The Powers' motion to modify was granted and their plan payments were reduced to $670 per month beginning in May 2012.

On June 17, 2013, the Trustee filed the motion to modify which is at issue here. The Trustee claims that the Powers' 2012 income tax return disclosed a $50,000 increase in income over the amounts shown on their 2011 return. After providing an involved tax calculation, the Trustee suggests that the Powers now have a net increase in income of $2984.92 per month. He suggests that for the twenty-three months which remained at the time the motion was filed, the Powers should raise their payments by $746 per month resulting in a total increase in Plan payments of $17,158. He suggests that after his commission, this increase would result in a net additional dividend to unsecured creditors of $15,442.

The Powers filed an objection to the motion to modify. They claimed that some of the increased income came from moving and relocation benefits received from Mrs. Powers' employer. Mrs. Powers was transferred by her employer to Florida. The Powers also claimed that they were divorcing and their expenses were changing and increasing due to the establishment of separate households.

–3–

The Trustee undertook discovery on the Powers' financial situation. Subsequently, the parties filed a stipulation on the submission of agreed documents. The documents include amended Schedules I and J prepared by Mrs. Powers and alternate amended Schedules I and J prepared by the Trustee for Mrs. Powers. On her own amended Schedule I, Mrs. Powers says that she is divorced and that her fifteen-year-old daughter resides with her. She discloses net monthly income of $5108.64 which includes $766 of Social Security benefits for her daughter but also includes the deduction of an auto loan payment. The Trustee's amended Schedule I for Mrs. Powers shows net income of $6509.76 per month. On her own amended Schedule J, Mrs. Powers claims $4546 in expenses. On the amended Schedule J prepared by the Trustee, expenses are listed as $4496 and the Trustee notes that he used "Means Test" figures for St. John County, Florida, for some of the figures. The parties' stipulation says that the Trustee's amended Schedule I accurately reflects Mrs. Powers' income for the "six month period for which pay advices were provided." Further, the parties agreed that the Trustee's amended Schedule J accurately reflects Mrs. Powers' expenses "with the exception of motor vehicle payments."

With respect to Mr. Powers, an amended Schedule I was filed which the parties stipulated correctly discloses his current income. Mr. Powers now receives $1559 per month in Social Security benefits and $3088 per month in VA benefits for total monthly income of $4647. Mr. Powers prepared an amended Schedule J which claims $4712.56 in expenses. Another amended Schedule J was prepared by the Trustee showing $2856 in monthly expenses for Mr. Powers and noting that the Trustee used "Means Test" figures from St. John County, Florida, for "reasonably necessary" expenses. The parties agreed that Mr. Powers' own amended Schedule J accurately reflects his current expenses.

The stipulation also includes some pay advices, the Powers' 2012 tax return, and Mrs.

– 4 –

Powers' 401k loan statement. Both parties rely on the stipulation for their factual presentation and waived the opportunity for an evidentiary hearing. Both the Trustee and the Powers' attorney have briefed the issues.

### B. David Powell

David Powell filed his voluntary petition under Chapter 13 on September 20, 2011. His subsequently-filed B22C showed that he was an under-the-median-income debtor with an applicable commitment period of three years. Although both Mr. Powell's B22C and Schedule I disclosed gross income in excess of $7000 per month, he supports a spouse, a stepson, a daughter, and a grandson. His net income was shown as about $5200 per month and on his Schedule J, he claimed expenses of almost $5000 per month. The Trustee initially objected to the B22C, claiming that Mr. Powell had incorrectly completed the form and that if the form were corrected, Mr. Powell would have a five-year applicable commitment period. Mr. Powell filed an amended B22C which showed he was an over-the-median-income debtor but the Trustee subsequently conceded that Mr. Powell was, in fact, an under-the-median-income debtor.

After several failed attempts at plan confirmation, Mr. Powell's Second Amended Chapter 13 Plan ("Amended Plan") was finally confirmed on July 26, 2012. The Amended Plan proposed payments over a thirty-six-month term totaling $15,096. Of that amount, $10,507 was projected to be paid to unsecured creditors.

On June 17, 2013, the Trustee filed his motion to modify claiming that Mr. Powell's income had increased by a little over $32,000 from 2011 to 2012. The Trustee requested that Mr. Powell increase his monthly plan payment by $436.75 for the last fifteen months of his plan term and, thereby, increase the dividend to unsecured creditors by almost $6000. Mr. Powell objected claiming

that he was not legally obligated to modify his the Amended Plan as requested.

The Trustee undertook significant discovery on Mr. Powell's financial condition. In lieu of an evidentiary hearing, however, the parties simply stipulated that "if there is legal authority" for the proposed increase, Mr. Powell does have significantly increased income and could make increased payments. Both parties also briefed the legal issues.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. Core proceedings include decisions about the confirmation of Chapter 13 plans and other proceedings affecting the adjustment of the debtor-creditor relationship. *See* 28 U.S.C. §157(b)(2)(A),(L),(O).

## III. Legal Analysis

The Trustee alleges in each case that the debtors have more income now than they had at the time of plan confirmation and, accordingly, their plans should be modified to provide increased dividends to their unsecured creditors. Although the Trustee concedes that the disposable income provisions of §1325(b) do not apply to motions to modify and denies that he is seeking to recalculate their disposable income, his motions to modify do, in fact, request a resetting of disposable income. Regardless of how the Trustee characterizes his motions, his evidentiary stipulations and his arguments claim that disposable income can and should be recalculated in both cases. Neither the Bankruptcy Code nor the case law interpreting the relevant Code provisions supports his position.

### A. Section 1325(b) Does Not Apply to §1329 Plan Modifications

Debtors are only required to commit all of their projected disposable income to plan

payments for distribution to unsecured creditors if the trustee or an unsecured creditor has objected to confirmation of the plan and if the debtor has not otherwise provided to pay all unsecured claims in full. 11 U.S.C. §1325(b)(1). Disposable income is calculated by first determining a debtor's "current monthly income," which is the average of the income earned by the debtor during each of the six calendar months preceding the case filing. 11 U.S.C. §101(10A). Reasonable and necessary expenses for the support of a debtor and his or her dependents are then deducted from the "current monthly income." 11 U.S.C. §1325(b)(2). For high-income debtors, the deductions for some reasonable and necessary expenses are fixed by the National and Local IRS standards. 11 U.S.C. §§1325(b)(3), 707(b)(2)(A)-(B). The net amount available after subtracting the expenses from "current monthly income" is multiplied by the number of months in a debtor's applicable commitment period to determine the debtor's total projected disposable income. 11 U.S.C. §1325(b)(1)(B). A debtor's "applicable commitment period" is calculated on the B22C and generally results in higher-income debtors having a sixty-month plan term and lower-income debtors having a thirty-six-month plan term. 11 U.S.C. §1325(b)(4). Once all of the calculations have been completed, the actual amount a debtor must pay unsecured creditors through a plan may be adjusted due to significant changes in circumstances which are known or virtually certain at the time of confirmation. *See Hamilton v. Lanning*, 560 U.S. 505, 524 (2010).

Under certain circumstances, confirmed Chapter 13 plans may be modified. 11 U.S.C. §1329. But modifications are allowed only for the purposes set forth in the statute. *Matter of Witkowski*, 16 F.3d 739, 745 (7th Cir. 1994). Those purposes include, *inter alia*, increasing or decreasing payments to particular classes of claims and extending or reducing the time for payments to be made. 11 U.S.C. §1329(a). Some, but not all, of the requirements for plan confirmation apply to plan modifications. Specifically, §1329(b)(1) provides:

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

11 U.S.C. §1329(b)(1).

The Trustee's motions seek to increase payments to the class of unsecured creditors in each case and, therefore, his motions are of the type allowed by §1329(a)(1). As the essence of the motions is to recalculate disposable income in each case, the motions appear to rely on §1325(b) for substantive authority. But because §1325(b) is not one of the provisions identified in §1329(b)(1) as applying to plan modifications, the issue arises as to whether the Trustee can seek a recalculation of §1325(b) disposable income with a motion brought under §1329.

The starting point for the analysis must be to give plain meaning to the language of the statutes at issue. *United States v. Ron Pair Enterprises, Inc*., 489 U.S. 235, 241 (1989); *see also Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (a court's inquiry may be limited solely to the plain meaning analysis unless the result is absurd). The express language of §1325(b) limits its applicability to plan confirmation. Plan modification is separate and distinct from plan confirmation. A plan must have been confirmed in order for a modification to be requested under §1329. *See In re Davis*, 439 B.R. 863, 866 (Bankr. N.D. Ill. 2010) (citing *Forbes v. Forbes (In re Forbes)*, 215 B.R. 183, 188 (8th Cir. BAP 1997)). The plain meaning of §1325(b) is that it provides an additional condition for confirmation of a plan which has otherwise met the requirements of §1325(a). *Davis*, 439 B.R. at 867. Nothing in §1325(b) suggests that it applies outside of the confirmation process.

Likewise, the express language of §1329(b)(1) lists the provisions of Chapter 13 which apply to plan modifications and the list does not include §1325(b). Implicit in listing the provisions that do apply to modifications is the exclusion of other unlisted provisions which do not apply. *See Davis*, 439 B.R. at 867 (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001)); *see also In re Young*, 370 B.R. 799, 802 (Bankr. E.D. Wis. 2007); *In re Forte*, 341 B.R. 859, 864 (Bankr. N.D. Ill. 2005).

–8–

The plain meaning of §1329(b)(1) is that the enumerated provisions apply to Chapter 13 modifications and other unenumerated provisions do not. To read §1329(b)(1) as incorporating provisions which were specifically not listed simply because it includes the broad mandates of §1325(a) would render the provision superfluous. If all provisions of Chapter 13 apply to plan modifications, there would have been no reason for §1329(b)(1) to have been drafted. *See Davis*, 439 B.R. at 868.

This Court has previously held that because §1325(b) by its own terms is limited to the confirmation process and is not made applicable to plan modifications by §1329(b)(1), proposed plan modifications are not analyzed under a disposable income test. *See In re Coay*, 2012 WL 2319100, at *5 (Bankr. C.D. Ill. June 19, 2012); *In re Walker*, 2010 WL 4259274, at *9-10 (Bankr. C.D. Ill. Oct. 21, 2010). The clear weight of authority is that the disposable income provision of §1325(b) does not apply to plan modifications under §1329. *See, e.g.*, *In re Lorenzo*, 2013 WL 1953319, at *2 (Bankr. S.D. Fla. May 10, 2013); *In re Salpietro*, 492 B.R. 630, 637 (Bankr. E.D.N.Y. 2013); *In re Tibbs*, 478 B.R. 458, 461 (Bankr. S.D. Fla. 2012); *Davis*, 439 B.R. at 866; *In re Prieto*, 2010 WL 3959610, at *2 (Bankr. M.D. Fla. Sept. 22, 2010); *In re Wetzel*, 381 B.R. 247, 251-52 (Bankr. E.D. Wis. 2008); *In re Hill*, 386 B.R. 670, 676 (Bankr. S.D. Ohio 2008); *Young*, 370 B.R. at 802; *Forte*, 341 B.R. at 864; *In re Golek*, 308 B.R. 332, 337 (Bankr. N.D. Ill. 2004); *In re Sounakhene*, 249 B.R. 801, 805 (Bankr. S.D. Cal. 2000); *Forbes*, 215 B.R. at 191; *In re Moss*, 91 B.R. 563, 566 (Bankr. C.D. Cal. 1988). Only limited authority suggests otherwise. *See, e.g.*, *In re King*, 439 B.R. 129, 134 (Bankr. S.D. Ill. 2010).

The disposable income provision of §1325(b) was added to the Code in 1984 and the language limiting its applicability to the confirmation process was in the original provision. *See Matter of Smith*, 848 F.2d 813, 820 (7th Cir. 1988). Amendments made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), however, confirm, as a practical

–9–

matter, the inapplicability of §1325(b) to plan modifications under §1329.[1] Under BAPCPA, the old best efforts test gave way to a new rigorous and formulaic calculation of disposable income. *See In re York*, 415 B.R. 377, 378-79 (Bankr. W.D. Wis. 2009). As set forth above, a debtor's "current monthly income" and "applicable commitment period" are both calculated based on the income earned by a debtor during the six-month period before filing. A high-income debtor must refer to IRS standards published as of the date of filing for the amount of some expense deductions. Only changes in income or expenses which, as of the date of confirmation, are known or virtually certain to occur may be used to adjust the calculation. Thus, once properly calculated using the required statutory formula, disposable income is not subject to change at a later date because the components of the calculation are fixed as of confirmation. *Id.* at 382.

Either §1325(b) applies to plan modifications as it is written and in its entirety or it does not apply at all. Because as a practical matter it cannot apply in its entirety and because §1325(b) is limited to use in the confirmation process and not included in §1329(b)(1), §1325(b) does not apply to plan modifications and cannot, therefore, provide substantive authority for modifying a confirmed plan to reset disposable income.

---

[1] The Trustee argues that because no change was made to §1329 by BAPCPA, Congress must have intended to continue to allow motions to modify confirmed Chapter 13 plans to reset disposable income as the Trustee is seeking to do here. But that assumes that the pre-BAPCPA law clearly allowed such modifications, which is not the case. The long line of cases holding that §1325(b) does not apply to §1329 modifications includes both pre-BAPCPA and post-BAPCPA cases. And in the Seventh Circuit, *Witkowski* — decided in 1994 — clearly established that plans could only be modified for purposes set forth in §1329(a) subject to the relevant Code provisions enumerated in §1329(b)(1). *Witkowski*, 16 F.3d at 745. If the Trustee's grounds for his motion are other than statutory — and he admits that they are — then his argument relying on the lack of change to §1329 makes little sense. If the Trustee's post-confirmation resetting of disposable income was not expressly authorized by statute pre-BAPCPA — and it was not — then it is not expressly authorized by statute now.

*B. Section 1329 Modifications Must be Based on Statutory Authority*

Even though the Trustee has acknowledged that §1325(b) does not apply to plan modifications under §1329, the only purpose of his motions is to reset disposable income and require increased payments to unsecured creditors in each case. Because he lacks statutory support for resetting disposable income after confirmation, the Trustee suggests there are equitable grounds for the relief he seeks. In his brief, the Trustee claims that motions to modify which do not directly contravene or run afoul of a Code provision should be evaluated "solely on the equities of the situation." The Trustee's position is that so long as he seeks a type of modification described in §1329(a), he needs no other statutory authority to justify a proposed modification. To the contrary, he suggests that a court in its discretion should look at all the circumstances and do whatever it thinks the equities compel.

In large measure, the Trustee relies on *Witkowski* to support his arguments. Granted, *Witkowski* does hold that there is no threshold amount of changed circumstances required to bring a motion to modify a confirmed Chapter 13 plan and that "the doctrine of *res judicata* does not apply." *Witkowski*, 16 F.3d at 746. But *Witkowski* also makes clear that modifications are allowed only for the purposes set forth in §1329(a) and only if the modifications comply with the specific provisions enumerated in §1329(b). *Id.* at 745. And *Witkowski* clarifies that the inapplicability of *res judicata* relates only to the issue of the threshold amount of change needed to seek such modifications. *Id.* at 748. Finally, *Witkowski* reminds that the allowance of plan modification is within a court's discretion. *Id.* But nothing in *Witkowski* suggests that plan modifications may be allowed absent express statutory authority simply because a trustee, an unsecured creditor, or a debtor wants a change. And nothing in *Witkowski* would support a finding that a debtor with a confirmed plan can be made to pay more — or be allowed to pay less — absent any statutory authority and solely because the arguments, one way or the other, have some equitable appeal.

-11-

In considering whether there is equitable authority to modify confirmed Chapter 13 plans, it is important to note the general rule that confirmed plans bind the debtor and each creditor. 11 U.S.C. §1327(a). The Seventh Circuit has repeatedly emphasized the sanctity of confirmation orders. *See, e.g.*, *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000); *Matter of Greenig*, 152 F.3d 631, 635 (7th Cir. 1998); *Matter of UNR Industries, Inc.*, 20 F.3d 766, 769 (7th Cir. 1994); *Holstein v. Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993); *Matter of Pence*, 905 F.2d 1107, 1110 (7th Cir. 1990). Nothing in this strong body of case law suggests that this Court can exercise its discretion to modify a confirmed Chapter 13 plan other than for the reasons or under the circumstances expressly provided for by statute.

Allowing plan modifications requested by either a trustee, an unsecured creditor, or a debtor for reasons and upon terms not set forth in the Code, but rather based on equitable grounds, raises practical problems beyond the legal concerns addressed above. Absent clear guidelines, equitable arguments for modification could be used to defeat the underlying intent of the formulas contained in the Code which control confirmation in the first place. The disposable income calculation of §1325(b) does not necessarily yield a fair or equitable result in every case. Some income, such as Social Security benefits and child support, need not be considered in the calculation and that creates a disparity which might be viewed as inequitable. *See* 11 U.S.C. §§101(10A), 1325(b)(2); *see also In re Brooks*, 498 B.R. 856, 863-64 (Bankr. C.D. Ill. 2013) (Perkins, J.) (child support income not counted in disposable income calculation). In other cases, debtors claim fixed amounts from IRS standards for some expense deductions regardless of their actual expenses, leaving some debtors with windfalls and others shortchanged. This disparity is also arguably inequitable. But the inequities, if any, in the current statutory formulas must be remedied by Congress and not by allowing the Trustee to take a second run at a disposable income calculation through plan modification, unconstrained by the original statutory formulas.

-12-

The practical problems associated with allowing an equitable modification to reset disposable income are obvious in the Powers' case. The Powers have disclosed that they both are receiving Social Security benefits including $1559 by Mr. Powers and $766 by Mrs. Powers for her daughter. The Trustee includes the Social Security benefits in his calculations, suggesting that the Powers have increased income and can pay more.[2] But the Trustee also quibbles with Mrs. Powers about her expenses and reduces those expenses on his proposed Schedule J, albeit by only about $50 per month, because he applies IRS Local standards to some of her expenses. Thus, the Trustee seeks to reset disposable income, free from the constraints of the original formula on the income side while still imposing the statutory limits on the expense side. His approach in that regard has little equitable appeal.

The parties agreed that the Trustee's Amended Schedule J for Mrs. Powers was correct and that document shows her with $2013.76 net income after expenses. The parties also stipulated that Mr. Powers' amended Schedule J correctly shows a negative $65.56 per month available. Thus, the Powers have a combined net of $1948.20 available income, but only after including $2425 in Social Security benefits in the calculation. Although it is not disputed that Mrs. Powers has had a real increase in her earned income, compelling modification as requested would allow the Trustee to do an end-run around the original confirmation standards which do not include Social Security income in the §1325(b) calculation. Modification requests, whether made by a trustee or a debtor, must be proposed in good faith, and moving to modify to circumvent the original confirmation requirements may suggest bad faith. *York*, 415 B.R. at 382.

Another practical concern with allowing equitable plan modifications is determining the

---

[2] It is clear that the Trustee intended to include the Social Security income received by both Mr. and Mrs. Powers in his calculations. His amended Schedule I prepared for Mrs. Powers, however, appears to have a mathematical error which subtracts rather than adds in the benefit. It is clearly an error because if the Trustee had intended to ignore the benefit, he would not have added or subtracted it. The error changes the Trustee's numbers but not the overall result here.

-13-

starting point for the original disposable income calculation. The Trustee claims in each case that the 2012 income tax returns show an increase in income from the 2011 returns and that those changes justify the requested modifications. But in these cases, as with many others, the tax return for the year in which the plan was confirmed was not determinative of disposable income or the amount proposed to be paid to unsecured creditors. Unless the correct starting point is identified, no equitable amount of change can be identified.

The Powers' case is again illustrative of the problem. The Powers' B22C filed with their petition showed $18.43 per month in disposable income. Over sixty months, they would have been required to pay unsecured creditors less than $1200 to meet the requirements of §1325(b). But they proposed to pay unsecured creditors over $22,000 because that amount was required to make sure that unsecured creditors receive as much as they would if the Powers had filed Chapter 7 and had their non-exempt unencumbered property liquidated. 11 U.S.C. §1325(a)(4). The Powers' case is not unique. Debtors often propose to pay in more than their disposable income calculation suggests they must pay. Sometimes they do so because the larger amount is required in order to save property or to pay priority claims in full. But debtors are not required to pay their unsecured creditors the sum of their disposable income and liquidation analysis amounts. Rather they must pay only the higher of the calculations which then satisfies both tests. By proposing to pay over $22,000 to unsecured creditors, the Powers essentially covered not only the equity in the property they wanted to keep but also up to $22,000 in disposable income. The Trustee now identifies approximately $17,000 in additional disposable income that he says should be added to the Plan. But the Powers are already paying more than that to their unsecured creditors.

If the less than $1200 the Powers would have had to pay to unsecured creditors based on their B22C is the starting point for the Trustee's motion to modify calculation, then adding $17,000 in increased disposable income leaves them with no more to pay into their Plan because they are

–14–

already paying $22,000 to unsecured creditors. No equitable argument — or legal argument for that matter — can be made that they must do more. The argument for an increase can only be made if, contrary to the facts, the assumption is made that $22,000 was the Powers' starting disposable income. But it was not, and the Trustee's equitable arguments fail for that reason.

A similar problem arose in the *Coay* case. In *Coay*, by the time the Trustee sought modification, the Coays were paying unsecured creditors not only the over $10,000 agreed to as part of the original plan confirmation process, but also an additional $16,000 which had been earmarked for a mortgage lender's claim. *Coay*, 2012 WL 2319100, at *9. After the lender obtained stay relief and withdrew its claim, the Coays did not seek to modify their confirmed plan and, at the time the motion to modify was filed, the Trustee was projecting that all of the lender's funds would go to unsecured creditors instead. *Id.* Nevertheless, even though there was no evidence that at the time of confirmation anything near $26,000 was available as disposable income, the Trustee sought modification using the Coay's 2009 tax return as a starting point and relying on the faulty assumption that what was already being paid in was based on that return. *Id.* at *3. This Court denied the requested modification on the legal grounds set forth above and also found that the Trustee had failed to meet his burden of proof on the facts. *Id.* at *9.

In *Coay*, this Court found that at the time the Trustee's motion to modify was filed, the Coays were already "gratuitously paying unsecured creditors significantly more than they would have been required to pay if they had litigated the issue in early 2010." *Id.* But the fault, if any, for that result was with the Coays and their attorney, not with the Trustee. Debtors may pay more than they are obligated to, and it is not up to the Trustee to suggest to them that they should do otherwise. And to be clear, this Court finds no fault with the Trustee and debtors settling issues relating to disposable income calculations and agreeing on plan payment amounts to expedite confirmation. What is a concern, however, is the Trustee's failure to realize that by reason of some of those settlements,

some debtors are doing more than they are obligated to do or, as with the Powers, are doing all that they are obligated to do. Under those circumstances, this Court must find that in addition to there being no legal authority for equitable plan modifications, there is also no factual basis to claim entitlement to the equitable relief requested.

Finally, it must be noted that within recent weeks, the Supreme Court has again emphasized the limits on bankruptcy courts' equitable powers, stating, "[w]e have long held that 'whatever equitable powers remain in bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code." *Law v. Siegel*, 571 U.S. __, 134 S. Ct. 1188, 1194-95 (2014) (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)). The Bankruptcy Code contains an express formula for calculating disposable income, an express provision limiting the disposable income calculation to the confirmation process, and an express provision identifying the relevant Code provisions applicable to plan modifications. The Supreme Court's recent pronouncements do not support throwing out all of those express Code provisions in favor of a simple consideration of the equities as the Trustee suggests here.

### C. No Other Code Provisions Support the Trustee's Position

When plan modification is sought by a trustee, an unsecured creditor, or a debtor, the statutorily-created tests of good faith, best efforts or liquidation analysis, and feasibility apply. 11 U.S.C. §§1325(a)(3),(4),(6), 1329(b)(1); *see Wetzel*, 381 B.R. at 254-55. And the movant has the burden of proof by a preponderance of the evidence on all issues. *Id.* When discussing an issue such as feasibility, a debtor's current income and expenses are obviously relevant to the inquiry. *See Walker*, 2010 WL 4259274, at *10; *Coay*, 2012 WL 2319100, at *7. But no Code provision suggests that a debtor's current income and expenses — however determined — should simply be netted to decide if plan payments should be modified.

-16-

The Trustee has not raised any other applicable Code provision to support his motions. He does not claim that either the Powers or Mr. Powell have acquired new assets which should be considered or that the feasibility of either the Powers' Plan or Mr. Powell's Amended Plan has been compromised. Obviously, nothing herein should be construed as suggesting that the Trustee does not have authority to bring motions to modify under the applicable Code provisions. The holding here is limited to his ability to bring a motion not supported by any Code provisions and based solely on his view of the equities.

The statutory framework for properly prosecuting a motion to modify is clear. A motion to modify must first seek relief of the type described in §1329(a). When a motion is brought seeking a modification not of the type allowed, it will be denied. *See, e.g.*, *In re Conley*, 504 B.R. 661, 663 (Bankr. D. Colo. 2014) (debtor may not use a motion to modify a confirmed plan to rebifurcate a secured claim); *In re Arquin*, 345 B.R. 876, 882 (Bankr. N.D. Ill. 2006) (debtor may not use a motion to modify to effectuate surrender of vehicle and reclassify balance due on secured claim as unsecured).

Second, the motion must comply with and be supported by the Code provisions made applicable to modifications by §1329(b)(1). Frequently, motions to modify are brought to require a debtor to pay in the liquidation value of after-acquired assets. 11 U.S.C. §1325(a)(4); *see also* *Wetzel*, 381 B.R. at 252 (collecting cases). Alternatively, modifications are often sought when a plan as originally confirmed is no longer feasible and a debtor can no longer comply with its terms. 11 U.S.C. §1325(a)(6); *see also Davis,* 439 B.R. at 869. The good faith requirement provides a check and balance on proposed modifications whether requested by a trustee, a debtor, or a creditor. 11 U.S.C. §1325(a)(3); *Davis*, 439 B.R. at 869. Finally, any proposed modification is subject to notice and an opportunity to be heard by all parties in interest. 11 U.S.C. §1329(b)(2). It is at this stage that the Court must exercise its discretion. *See Forte*, 341 B.R. 866-67.

In making his arguments, the Trustee complies with the first step of the process in that the relief he requests is of the type mentioned in §1329(a). But he skips past the second step arguing that although he must not specifically run afoul of the relevant Code provisions, his proposed modifications need not find any affirmative support in those Code provisions. He then moves to the third step arguing that this Court can exercise its discretion without reference to the Code and based "solely on the equities." As set forth above, this Court finds little authority for that position. And to the extent that the Court's discretion is as broad as the Trustee suggests, as set forth below, the Court finds that the Trustee has not made his case that the equities support his requested modifications in either case.

### D. The Trustee Has Not Established a Factual Basis for Relief in Either Case

Deciding to grant or deny a motion to modify a confirmed Chapter 13 plan is within a court's discretion. *See Witkowski*, 16 F.3d at 748; *Forte*, 341 B.R. at 869-70. As with any motion, the movant must establish both legal authority and a factual basis for the relief requested. Here, the Court has already found that the Trustee lacks legal authority for the relief he requests. But it is also important to briefly consider the facts presented. Again, because the facts of the two cases differ, they must be discussed separately.

### 1. Myrick and Elvie Powers

The facts associated with the motion seeking to modify the Powers' Plan have already been discussed at some length. The Powers' original disposable income calculation did not include their Social Security income and resulted in $18.43 per month available for unsecured creditors. Notwithstanding their lack of disposable income, the Powers proposed to pay unsecured creditors over $22,000 through their Plan to cover the liquidation value of non-exempt unencumbered

-18-

property.

The Trustee has identified what he claims is approximately $17,000 in additional disposable income based on the Powers' current circumstances. But that amount is calculated by including the Powers' Social Security benefits. And the amount of disposable income claimed to be due to unsecured creditors now is still less than the amount the Powers are already actually paying to unsecured creditors. Even if the Powers were required to increase their disposable income payments by $17,000, there is no authority to require them to pay that in addition to the liquidation value of their property. The $22,000 they are paying covers both requirements. The facts do not support the requested plan modification or an exercise of this Court's discretion to compel modification over objection.

### 2. David Powell

The only evidence presented by the Trustee in support of his motion as to Mr. Powell is the stipulated fact that Mr. Powell could pay the requested increased payment if ordered to do so. This one fact means that the Trustee's request does not run afoul of the feasibility requirement for plan modification, but does little to assist the Court in determining whether the Court should exercise its discretion to order plan modification over Mr. Powell's objection.

Mr. Powell's original Schedules I and J showed about $193 per month in disposable income available, and that is what he proposed to pay in his first plan. After some back and forth with the Trustee, which appears to have involved the treatment of Mr. Powell's non-filing spouse's small amount of self-employment income, the Amended Plan was confirmed which required payments of $193 for four months, $200 for four months, and $483 for twenty-eight months. Where these final numbers came from is unknown. Mr. Powell's Amended B22C filed in January 2012 showed negative disposable income of $46.07 per month. No other helpful financial information is in the

record although Mr. Powell sought and received extensions of time to file amended plans on several occasions based on his representations that he was gathering financial information for the Trustee.

The Trustee claims in his motion to modify that Mr. Powell's income increased based on a comparison of his 2011 and 2012 income tax returns. That may well be. But there is nothing in the record to suggest that his original plan payments were based on the income shown on his 2011 return. To the contrary, his Amended Plan was finally confirmed in July 2012. Thus, at the time of confirmation, more than half of 2012 had passed and whatever income he was making at the time was known or, at least, knowable. The sketchy facts presented here do not support the requested plan modification or an exercise of this Court's discretion to compel modification over objection.

### IV. Conclusion

The Trustee concedes that the disposable income provisions of §1325(b) do not apply to plan modifications under §1329. Nevertheless he seeks to reset disposable income in each case. But he has failed to provide authority for the proposition that plan modifications may be compelled solely on equitable grounds. And in each case here, the Trustee has failed as a matter of fact to establish that even if the Court has the broad discretion he suggests, the equities run in his favor and compel plan modifications over the objections of the debtors.

In deciding these issues, this Court is well aware of the Trustee's arguments about the conventional wisdom of how Chapter 13 cases are administered. And, of course, his basic argument that debtors who can pay more should be made do so has equitable appeal in some quarters. But the plain meaning of the statutes gets in the way and compels the result here.

This Court is also aware of the language in the Supreme Court's opinion in *Ransom* which suggests that motions to modify to increase debtor plan payments may be routinely brought. *Ransom v. FIA Card Services, N.A.*, 562 U.S. ___, ___, 131 S. Ct. 716, 729 (2011). But *Ransom* does not say

that §1325(a) applies to §1329 motions or that §1329 motions may be based solely on the equities and not on the Code. More importantly, *Ransom* does not address the scope of bankruptcy courts' equitable powers. Perhaps one day the Supreme Court will speak precisely on the issue, and if that decision is that bankruptcy courts have the broad equitable powers the Trustee claims they do, this Court will not complain. In the meantime, this Court must decide the cases before it constrained by the plain meaning of the relevant Code provisions. And regardless of the limits of the Court's discretion, the results would not change here because the Trustee failed to establish that the equities run in his favor in either of the cases before this Court.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###